Eric Lechtzin (SBN 248958)
EDELSON LECHTZIN, LLP
411 South State Street
Suite N-300
Newtown, PA 18940
Tel: 215-867-2399, Ext. 1
elechtzin@edelson-law.com

Brandon J. Hill
Luis A. Cabassa
Amanda E. Heystek
WENZEL FENTON CABASSA, P.A.
1110 N. Florida Avenue, Suite 300
Tampa, FL 33602
Telephone: (813) 224-0431
bhill@wfclaw.com
lcabassa@wfclaw.com
aheystek@wfclaw.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MARY LEBRUN OBOT-AKATA, BRI A. BLACK, CRYSTAL MICHELLE PHILLIPS, HOLLY MARIE LYONS, KYLIE E. BARKER, MATTHEW JOSEPH ELLISON, MARGARET M. FIORENTINO, MELANY A. MCCARTY, MITCHELL R. BROWN, SHANNON LEE COMPTON, and TANA PAIGE MITCHELL, individually and on behalf of themselves, the Plan and all others similarly situated,

Plaintiffs,

vs.

KPC PROMISE HEALTHCARE, LLC, KPC HEALTHCARE, INC., KALI P. CHAUDHURI, BROKERAGE CONCEPTS, LLC, dba HEALTHNOW ADMINISTRATIVE SERVICES, and AMERICAN ADVANCED MANAGEMENT, INC.,

Defendants.

Case No. 5:24-cv-01893

**SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, 29 U.S.C. § 1001, *ET SEQ*.**

## PRELIMINARY STATEMENT

1.      Pursuant to this Court's Order (ECF No. 77) dated April 30, 2026, this second amended class action is brought by plaintiffs Mary LeBrun Obot-Akata, Bri A. Black, Crystal Michelle Phillips, Holly Marie Lyons, Kylie E. Barker, Matthew Joseph Ellison, Margaret M. Fiorentino, Melany A. McCarty, Mitchell R. Brown, Shannon Lee Compton, and Tana Paige Mitchell (collectively "Plaintiffs"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, against defendants KPC Promise HealthCare, LLC ("KPC" or the "Company"), KPC Healthcare, Inc. ("KPC Healthcare"), Kali P. Chaudhuri (the "Individual Defendant" or "Chaudhuri"), Brokerage Concepts, LLC, dba HealthNow Administrative Services ("HNAS"), and American Advanced Management, Inc. ("AAM") (collectively, "Defendants"), seeking restitution, injunctive relief, and other appropriate relief for harms suffered by the KPC Promise Healthcare, LLC Health and Welfare Plan (the "Plan") and its participants.

2.      Plaintiffs are current and former employees of KPC. Certain Plaintiffs and proposed Class Members became employees of AAM on or after May 22, 2024. During the relevant time period, KPC (and subsequently AAM) offered health benefits to its employees through a self-funded plan, the Plan. Plaintiffs and other employees made payments via regular payroll deductions made by KPC (and later by AAM), which was responsible for funding the Plan and ensuring its ability to make payments for covered health benefits. KPC, however, has ceased funding the Plan (or has grossly underfunded the Plan), which has therefore ceased paying covered claims for benefits. KPC, KPC Healthcare, and senior executive Chaudhuri have misappropriated and misused Plan assets. As a result, Defendants have stolen Plaintiffs' wages and benefits and left them

vulnerable to substantial financial liability to their medical providers, which the Plan was required to pay and/or reimburse for covered claims.

3.     Beginning in approximately January 2023 (the "relevant time period"), the Company consistently withheld from employee paychecks money intended to fund the Plan, but Defendants failed to segregate such funds in a separate trust account of the Plan and/or a separate Plan account, and/or also failed to forward employer contributions to the Plan and instead misappropriated and misused Plan assets. Following its acquisition of KPC hospitals, AAM has continued to misappropriate such employee payroll deductions.

4.     By the actions and omissions specified herein, Defendants breached their fiduciary duties of exclusive purpose, prudence, and loyalty, caused the Plan to enter into non-exempt prohibited transactions, and engaged in self-dealing.

5.     Because of these fiduciary breaches, Plaintiffs continued to participate in the Plan and contribute additional funds to KPC and, later, AAM (via regular payroll deductions made from all Plan participants) and seek covered medical care for which Defendants caused Plaintiffs to believe that the Plan would pay. Consequently, Plaintiffs have received collection notices from their doctors and other medical providers for amounts owed by the Plan for covered health benefits. The Plan, its participants, and its beneficiaries have suffered losses, including lost opportunity costs and unpaid health claims, for which the Company is liable.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action under 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought

SECOND AMENDED CLASS ACTION COMPLAINT - 3
CASE NO. 5:24-CV-01893

under Title I of ERISA, 29 U.S.C. § 1001, *et seq.*, and pursuant to 28 U.S.C. § 1331, because it is a civil action arising under the laws of the United States.

7. This Court has personal jurisdiction over Defendants because they are headquartered and transact business in, or reside in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.

8. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), and 29 U.S.C. § 1391 because some or all of the fiduciary breaches at issue in this Complaint occurred within this District. Venue is also proper in this District pursuant to 29 U.S.C. § 1391, because Defendants do business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

**Plaintiffs**

9. Plaintiff Mary LeBrun Obot-Akata, a citizen and resident of Amarillo, Texas, was and is an employee of KPC Promise Hospital of Amarillo LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

10. Plaintiff Bri A. Black, a citizen and resident of Burkburnett, Texas, was an employee of KPC Promise Hospital of Wichita Falls, LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

11. Plaintiff Crystal Michelle Phillips, a citizen and resident of Amarillo, Texas, was and is an employee of KPC Promise Hospital of Amarillo LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

12. Plaintiff Holly Marie Lyons, a citizen and resident of Amarillo, Texas, was an employee of KPC Promise Hospital of Amarillo LLC and a participant in the

Plan within the meaning of 29 U.S.C. § 1002(7).

13. Plaintiff Kylie E. Barker, a citizen and resident of West Valley, Utah, was and is an employee of KPC Promise Hospital of Salt Lake LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

14. Plaintiff Matthew Joseph Ellison, a citizen and resident of Amarillo, Texas, was and is an employee of KPC Promise Hospital of Amarillo LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

15. Plaintiff Margaret M. Fiorentino, a citizen and resident of Boynton, Florida, was an employee of KPC Promise Healthcare, LLC, and is a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

16. Plaintiff Melany A. McCarty, a citizen and resident of Canyon, Texas, was and is an employee of KPC Promise Hospital of Amarillo LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

17. Plaintiff Mitchell R. Brown, a citizen and resident of Raymore, Missouri, was and is an employee of KPC Promise Hospital of Overland Park and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

18. Plaintiff Shannon Lee Compton, a citizen and resident of Hooper, Utah, was and is an employee of KPC Promise Hospital of Salt Lake LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

19. Plaintiff Tana Paige Mitchell, a citizen and resident of Amarillo, Texas, was and is an employee of KPC Promise Hospital of Amarillo LLC and a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

20. Each of the named Plaintiffs has incurred thousands, if not tens of thousands, of dollars in unpaid medical bills that were covered under the Plan. Plaintiffs also have been required to pay out of pocket for medical treatment that

was covered under the Plan so that they can receive reasonable and necessary medical care from medical providers who have not been reimbursed by the Plan. As a result of Defendants' failure to properly fund the Plan, Plaintiffs and similarly situated Plan participants and beneficiaries have received collection notices from medical providers, and their credit scores have been adversely affected.

**Defendants**

21. Defendant KPC Healthcare, Inc. is a Nevada corporation with its principal place of business located at 1301 N. Tustin Ave., Santa Ana, California 92705. KPC Healthcare, Inc. consists of a group of integrated medical facilities in Southern California. KPC is a subsidiary of KPC Healthcare Inc. At all relevant times, KPC Healthcare, Inc. had and exercised control and authority over Plan assets and is therefore a fiduciary with respect to the Plan under ERISA.

22. Defendant Kali Pradip Chaudhuri is the Chairman, Founder, and CEO of KPC, and he maintains his professional offices at 9 KPC Parkway, Suite #301, Corona, California 92879. At all relevant times, Chaudhuri exercised control and authority over Plan assets and therefore is a fiduciary with respect to the Plan under ERISA.

23. During the relevant time period, KPC, a specialty hospital post-acute healthcare system, which owns a number of hospitals and skilled nursing facilities, was the sponsor of the Plan and was its administrator.

24. During the relevant time period, KPC had authority to administer and manage the Plan, and therefore, was a fiduciary under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

25. KPC was also a party in interest to the Plan during the relevant time period under ERISA § 3(14)(A), (C), 29 U.S.C. § 1002(14)(A), (C), because it was

SECOND AMENDED CLASS ACTION COMPLAINT - 6
CASE NO. 5:24-CV-01893

a fiduciary to the Plan, and because it was the employer of Plaintiffs and the participants in the Plan.

26.    Defendant American Advanced Management, Inc. ("AAM") is a healthcare management company headquartered at 700 17th Street, Modesto, California 95354.

27.    On or about May 22, 2024, AAM purchased four KPC Promise medical facilities and/or assumed operational and financial control over those facilities. During the regulatory transition, employees at those facilities remained on KPC Promise's payroll and continued participating in the Plan. For claims incurred after May 31, 2024, Defendant HNAS invoiced AAM for payment of covered claims for employees under AAM's oversight. AAM was responsible for funding the Plan for those employees and acknowledged responsibility for covered claims incurred on or after June 1, 2024.

28.    AAM controlled whether funds would be made available to pay covered claims for Plan participants working at the facilities under AAM's operational and financial control, and Defendant HNAS was unable to pay those claims unless AAM sufficiently funded the Plan. AAM therefore exercised authority or control over Plan funding and administration for employees under its oversight and is a fiduciary with respect to the Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), at least to the extent of its authority and control over post-May 31, 2024, Plan funding and covered claims for those employees.

29.    Defendant Brokerage Concepts, LLC, dba HealthNow Administrative Services ("HNAS") served as the Plan's third-party administrator at all times pertinent to this action and was responsible for processing claims, invoicing the responsible entities for amounts needed to pay those claims, and

administering the claim-payment process. HNAS maintains its headquarters at 512 Township Line Road, One Valley Square, Suite 110, Blue Bell, Pennsylvania 19422. At all relevant times, HNAS had and exercised control and authority over Plan assets and therefore is a fiduciary with respect to the Plan under ERISA.

30.     During the relevant time period, the Plan was an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3).

## FACTUAL ALLEGATIONS

31.     A self-funded benefits plan is a form of self-insurance by which an employer uses its own funds to provide benefits to employees. Rather than obtaining insurance policies from an insurance carrier, the employer assumes direct responsibility for the cost of benefits. Self-funded plans are advantageous for employers, as they are generally less expensive than traditional insurance. In addition, the employer can retain possession and control of the funds in trust that otherwise would be paid to an insurance carrier for traditional insurance.

32.     KPC offered health benefits to its employees, including Plaintiffs, through its self-funded Plan.

33.     Although KPC could have procured health and other insurance for its employees, it instead opted to implement a self-funded plan as it was financially advantageous to the Company.

34.     Employees contributed to the Plan via weekly payroll deductions, with KPC promising that it would provide additional contributions.

***Defendants Have Not Fully Remitted Employee Contributions to the Plan***

35.     During the relevant time period, KPC consistently deducted employee contributions to the Plan from employees' weekly pay.

36.     During the relevant time period, KPC (and later AAM) was required

to establish a dedicated bank account in which employee payroll deductions would be held in trust and segregated from KPC's general corporate funds.

37. During the relevant time period, KPC (and later AAM) was also required to fund the Plan sufficiently to cover all necessary benefit payments under the Plan. The Company was required to fund this account with amounts deducted from employee paychecks and, to the extent necessary, contribute additional funds to ensure full payment of benefits. The Company was responsible for remitting employee contributions to the Plans' accounts.

38. During the relevant time period, KPC (and later AAM) failed to segregate employee payroll deductions in a dedicated Plan trust account, failed to remit many employee contributions to the Plan, and failed to adequately fund the Plan. Instead, upon information and belief, Defendants retained the funds and misused Plan assets; engaged in self-dealing transactions by commingling Plan assets with general corporate funds and using them for their own benefit, and otherwise failed to administer the Plan in the interest of and for the exclusive benefit of Plan participants.

39. This failure to collect and segregate employee contributions acted as a *de facto* loan from the Plan to the Company.

40. Defendants did not increase employer contributions to the Plan or otherwise take steps to ensure that the Plan had sufficient funds to pay all covered claims.

41. Defendants, including HNAS, also failed to establish a prudent process to accurately and timely track Plan participants' medical expenses and Plan funding to ensure the timely and complete payment of covered claims.

42. Plaintiffs are informed and believe and thereon allege that the Plan

SECOND AMENDED CLASS ACTION COMPLAINT - 9
CASE NO. 5:24-CV-01893

was underfunded from on or before January 1, 2023. By no later than January 1, 2023, it was apparent to all Defendants that the Plan lacked sufficient funds to pay outstanding claims. Thus, it was necessary to further fund the Plan to avoid defaulting on Plan obligations.

43.     Defendants did not take reasonable steps to ensure that the Plan had sufficient funds to continue paying all covered claims. As to AAM, this failure includes AAM's refusal to fund or pay covered claims incurred on or after May 31, 2024, for Plan participants under AAM's operational and financial oversight, even though AAM had assumed responsibility for funding those claims, and HNAS could not pay them without AAM's funding.

44.     Defendants did not notify Plan participants that KPC had substantially and repeatedly failed to fund the Plan adequately. Plaintiffs are informed and believe and thereon allege that Defendants failed to take any reasonable steps to ensure adequate Plan funding by the Company or to notify Plan participants of the failure to fund the Plan. Defendants likewise failed to take any reasonable steps to notify Plan participants of the inevitable consequences of the failure to fund the Plan (*i.e.*, that the depletion of Plan funds would accelerate and the Plan would ultimately be unable to meet its obligations).

45.     The consequences were predictable: the Plan assets were depleted to the point that the Plan could not pay all covered claims and ultimately ceased paying claims.

46.     Defendants did not disclose to Plaintiffs or the Company's other employees that they had failed to adequately fund the Plan or that the Plan had ceased paying claims. Consequently, Plaintiffs and other employees continued to seek medical care and services with the expectation that the costs of such care and

services would be covered and paid for as provided by the Plan.

47.    AAM is not liable merely because it purchased KPC facilities, engaged in a business transition, or owed money under a contract. It is liable because it assumed operational and financial control over former KPC facilities whose employees remained Plan participants and then controlled whether the funds needed to pay those employees' covered medical claims would be provided to the Plan. In practical terms, AAM held the key to payment: without AAM's funding, HNAS could not release or pay the covered claims incurred by employees under AAM's oversight. AAM knew or should have known those claims existed, knew or should have known HNAS was invoicing it for the funds needed to pay those claims, and acknowledged responsibility for at least some of them. Yet AAM refused to fund the claims, leaving Plan participants and their beneficiaries with unpaid medical bills, collection risk, lost discounts, and out-of-pocket losses.

48.    On or about May 22, 2024, KPC sold four of its medical facilities to AAM. Because federal and state regulatory approvals for hospital ownership transfers required time, employees at those facilities technically remained on KPC Promise's payroll during the transition.

49.    Although those employees remained on KPC's payroll during the regulatory transition, AAM controlled the operations and finances of the facilities it acquired, including the funds available to support employee benefit obligations at those facilities. The Plan continued to cover the former KPC employees during this period, and AAM assumed and exercised responsibility for funding covered claims incurred by the Plan.

50.    For claims incurred after May 31, 2024, HNAS, the Plan's third-party administrator, invoiced AAM for the Plan and for payment of covered claims.

SECOND AMENDED CLASS ACTION COMPLAINT - 11
CASE NO. 5:24-CV-01893

Those invoices identified the amounts needed to pay claims for Plan participants and beneficiaries. AAM had the authority to decide whether to fund the payment of those invoices, and without AAM's funding, the Plan could not pay those covered claims. Thus, AAM knew or should have known that covered claims for Plan participants required funding and payment.

51.     Defendant AAM has acknowledged responsibility for covered Plan claims incurred on or after June 1, 2024. According to HNAS, AAM owes at least $1.6 million for covered claims incurred by the Plan on or after June 1, 2024. AAM cannot dispute that substantial covered claims incurred by Plan participants under its oversight remain unpaid.

52.     Defendant AAM has refused to pay any amount to HNAS or the Plan for the outstanding, unpaid covered claims incurred on or after June 1, 2024.

53.     Defendant AAM's refusal to fund the Plan has caused Plan participants and beneficiaries under AAM's oversight to suffer unpaid medical claims, out-of-pocket losses, collection activity, loss of the benefit of covered medical care, lost network discounts or repricing benefits, and other financial harm that would have been avoided had AAM funded the claims it was responsible for funding.

54.     By assuming operational and financial control over the facilities, accepting responsibility for funding the Plan, receiving HNAS invoices for covered claims incurred by its employees, and deciding not to fund those claims, Defendant AAM exercised authority or control over the Plan, its funding, and administration. Defendant AAM acted as an ERISA fiduciary of the Plan post-May 31, 2024, but AAM breached its fiduciary duties by failing to segregate employee payroll deductions in a dedicated Plan trust account, failing to adequately fund the Plan to

pay covered claims, failing to protect participants from the foreseeable consequences of underfunding the Plan, including collections and incurring out-of-pocket losses, and failing to take the steps needed to remedy known Plan funding failures.

55.     Defendants did not disclose to Plaintiffs or the Class that the Plan was not adequately funded, that covered claims had gone unpaid, or that claims incurred after May 31, 2024, for employees under AAM's oversight would not be timely funded or paid. AAM likewise did not notify Plan participants of its failure to fully fund the Plan. Consequently, Plaintiffs and the Class continued to seek medical care and services with the expectation that the costs of such care and services would be covered and paid for as provided by the Plan.

56.     As a result of Defendants' breaches of their fiduciary duties and other conduct described herein, Defendants have failed to pay substantial covered medical claims under the Plan, and participants and beneficiaries incurred charges that should have been covered by the Plan.

57.     Plaintiffs are informed and believe and thereon allege that Defendants' failure to pay covered claims is ongoing, and the harm to Plaintiffs and other Plan participants is continuing and increasing by the day.

58.     In addition to direct liability for fiduciary breaches, ERISA imposes on all fiduciaries responsibility for breaches of co-fiduciaries.

59.     Section 405(a) of ERISA, *inter alia*, provides:

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:(1) if he

participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C.A. § 1105(a).

60.    All Defendants were aware of the Plan's funding failures, the failure to pay claims when due, and the fiduciary breaches alleged herein. AAM had knowledge of the post-May 31, 2024, funding failures because it assumed operational and financial control over certain KPC facilities, was responsible for funding the Plan for its employees, received invoices for claims incurred after May 31, 2024, controlled whether those invoices would be funded, and acknowledged responsibility for at least some post-June 1, 2024, covered claims. No Defendant made reasonable efforts to remedy those breaches. By failing to fund the Plan, failing to warn participants, and failing to ensure that covered claims would be paid, Defendants knowingly concealed or failed to remedy the breaches of fiduciary duties and their foreseeable consequences for Plaintiffs and other Plan participants.

**HNAS's Breach of Fiduciary Duty for Negligent, Reckless, and Careless Administration of the Plan**

61.    HNAS, as the Plan's third-party administrator and a fiduciary to the Plan, owed duties of prudence and loyalty, including obligations to establish and

maintain accurate systems and controls to record, track, adjudicate, invoice for, and timely pay covered medical claims under the Plan, and to administer the Plan solely in the interests of participants and beneficiaries.

62.     HNAS served as the Plan's third-party administrator at all times pertinent to this action and was responsible for processing claims, invoicing the responsible entities for amounts needed to pay those claims, and administering the claim-payment process. At all relevant times, HNAS had and exercised control and authority over Plan assets and therefore is a fiduciary with respect to the Plan under ERISA

63.     HNAS breached its fiduciary duties to the Plan and its participants by negligently, recklessly, and carelessly administering the Plan, including by failing to implement and follow a prudent process to accurately and timely record, track, reconcile, and pay covered medical claims, and to ensure that Plan funding aligned with the amounts necessary to pay such claims when due. Defendants, including HNAS, failed to establish a prudent process to accurately and timely track Plan participants' medical expenses and Plan funding to ensure the timely and complete payment of covered claims

64.     HNAS further breached its fiduciary duties by failing to maintain complete, accurate, and current claim ledgers for covered services incurred by Plan participants and beneficiaries, and by failing to reconcile claims adjudication data with funding status and payment runs in a manner sufficient to prevent unpaid covered claims from aging into collections. The Plan's covered claims were not timely or fully paid, and participants and beneficiaries incurred charges that should have been covered by the Plan. Defendants did not take reasonable steps to ensure that the Plan had sufficient funds to continue paying all covered claims, which

foreseeably resulted in unpaid covered claims, collection risk, lost discounts, and out-of-pocket losses

65.    As part of its fiduciary administration, HNAS was required to generate accurate invoices reflecting the amounts necessary to pay covered claims, transmit those invoices to the correct responsible entity, monitor remittances, and promptly escalate and remediate delinquencies to protect participants from non-payment.

66.    Despite its responsibilities, HNAS failed to ensure that claims it had determined to be covered were accurately recorded and tracked through adjudication, funding, and payment, and failed to implement timely and adequate escalation, reconciliation, and participant-protective measures when funding shortfalls arose, thereby allowing covered claims to remain outstanding, accrue collection activity, and lose network discounts or repricing benefits.

67.    HNAS's negligent, reckless, and careless administration also included failures to: (a) maintain a reliable system of record for all covered claims submitted to the Plan; (b) timely post adjudication determinations and payment statuses; (c) regularly reconcile open claim inventories against funding and payment files; (d) promptly notify Plan participants of material nonpayment risks; and (e) take reasonable steps to prevent foreseeable harm from known funding delinquencies, all of which were fiduciary functions that HNAS undertook and controlled. HNAS had and exercised control and authority over Plan assets and administration, including responsibility for processing claims, invoicing for amounts required to pay those claims, and administering the claim payment process.

68.    HNAS's fiduciary breaches directly and proximately caused injury to

the Plan and its participants by enabling and prolonging systemic nonpayment of covered claims and by failing to implement prudent administrative safeguards that would have mitigated or prevented participant harm, including collections, adverse credit impacts, and out-of-pocket expenditures for covered services.

## CLASS ACTION ALLEGATIONS

69.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> The Class is defined as all participants and former participants in the Plan, except Defendants and their immediate family members, from September 5, 2018, to the date of judgment.

70.    If a class is certified by the Court, Plaintiffs will provide notice to the Class through a claims administrator by mailing a court-approved Notice to all members of the Class. The members of the Class can be identified by Defendant based on its business records. The claims administrator will also establish a website for the Class, and the Notice and other documents pertinent to the case will be posted there. The claims administrator will also establish a dedicated toll-free phone number for Class members to obtain information about the case.

71.    The claims set forth herein are properly maintained as a class action under Federal Rule of Civil Procedure 23 because all elements of Rule 23(a) are satisfied, and one or more of the Rule 23(b) factors are satisfied. Defendants have acted or refused to act on grounds that apply generally to the class, such that declaratory and injunctive relief is appropriate for the class as a whole, common questions of law and fact predominate over any questions affecting only individual class members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

72. **Numerosity.** The members of the class are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs allege that the proposed class contains approximately 500 members. The precise number and identities of all class members are unknown to Plaintiffs but are known to Defendants. Accordingly, it will be possible to notify the class of the pendency of this action by mail, electronic mail, notice or otherwise.

73. **Commonality and predominance of common questions of law and fact**. Common questions of law and fact exist as to all members of the proposed class, and these questions predominate over any individualized questions. These common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendants are Plan fiduciaries;

b.    Whether Defendants breached their fiduciary duties by failing to pay covered claims under the Plan;

c.    Whether Defendants breached their fiduciary duties by failing to discharge their duties with respect to the Plan solely in the interest of participants and beneficiaries, and for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan;

d.    Whether Defendants breached their fiduciary duties by failing to ensure that Plan assets were prudently managed;

e.    Whether Defendants breached their fiduciary duties by failing to notify Plan participants that Defendants had ceased paying covered claims;

f.    Whether certain Defendants knowingly participated in the

fiduciary breaches of other Defendants;

g.     Whether certain Defendants enabled fiduciary breaches by other Defendants;

h.     Whether certain Defendants, with knowledge of the breaches of other Defendants, failed to take reasonable efforts under the circumstances to remedy those breaches;

i.     Whether Defendants violated ERISA; and

j.     Whether Plaintiffs and the proposed class are entitled to declaratory, injunctive and/or other equitable relief, pursuant to ERISA or at common law, to remedy defendants' breaches of fiduciary duty, wrongful, unfair, and unlawful conduct as alleged herein, including without limitation an order requiring payment of all unpaid claims for covered health benefits and restoration to Plaintiffs and/or the Plan of all premium amounts deducted from Plaintiffs' paychecks during the relevant period.

74.     **Typicality**. Plaintiffs' claims are typical of the claims of the other proposed Class members, in that Defendants' breaches of their fiduciary duties impacted all Plan participants in the manner described above, including Plan participants whose claims have gone unpaid as well as Plan participants who have not yet suffered unpaid claims but who have had their wages deducted for Plan premium payments when no functional Plan existed.

75.     **Adequacy of representation**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel experienced in complex litigation, including ERISA matters, and Plaintiffs and their counsel intend to vigorously prosecute this action. Plaintiffs and their counsel have no interests adverse to those of the other proposed Class members.

76.    **Superiority**. A class action is superior to individual actions for achieving fair and efficient adjudication of this controversy. The financial and other detriment suffered by the Plan, the Plaintiffs and other members of the proposed class is relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants. Thus, it would not be possible to effectively redress the misconduct described above through individual actions. Further, individual actions would impose a greater burden on the Courts and all parties, as well as the risk of inconsistent judgments arising from the same or similar facts. Class litigation provides for the efficient adjudication of common issues in a single proceeding, and manageability concerns would preclude individual litigation.

77.    Class certification is also appropriate because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for Defendants; the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final declaratory, injunctive or other equitable relief with respect to the members of the class as a whole.

78.    Alternatively, certain issues relating to Defendants' liability may be certified pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure.

**FIRST CLAIM FOR RELIEF**
**Against All Defendants for Breach of Fiduciary Duty**
**(ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2))**

79.   Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

80.   The Plan documents identify KPC as the Plan Administrator and the Plan's Named Fiduciary. In addition, Chaudhuri, KPC Healthcare, HNAS, and AAM were responsible for making discretionary decisions regarding Plan administration and/or exercising authority or control respecting Plan assets, Plan funding, or payment of covered claims. As to AAM, its fiduciary status arises from its assumption of operational and financial control over certain KPC Promise facilities, its responsibility for funding the Plan for employees under its oversight, its receipt of HNAS invoices for covered claims incurred after May 31, 2024, its authority to decide whether those invoices would be funded, and its acknowledged responsibility for at least some covered claims incurred on or after June 1, 2024. Accordingly, all Defendants acted as fiduciaries of the Plan to the extent of their respective authority and control.

81.   As fiduciaries of the Plan, Defendants had the duties set forth in in ERISA § 404, 29 U.S.C. §1104, including but not limited to a duty of loyalty to the Plan and Plan participants, as well as duties not to make misrepresentations to Plan participants; to discharge their duties solely in the interests of Plan participants and their beneficiaries and for the exclusive purpose of providing benefits to them or defraying reasonable expenses of administering the Plan; to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and to discharge their duties in accordance with the documents and instruments

governing the Plan.

82.    Defendants breached their fiduciary duties by, among other things:

a.    failing to pay covered claims under the Plan;

b.    failing to ensure the Plan was adequately funded;

c.    failing to ensure that Plan assets were prudently managed;

d.    misappropriating and misusing Plan assets;

e.    failing to protect Plan participants from foreseeable provider collections, out-of-pocket expenses, and other financial harm caused by unpaid covered claims.

f.    failing to notify Plan participants that Defendants had ceased paying covered claims;

g.    as to AAM, failing to fund the Plan and/or pay covered claims incurred after May 31, 2024, for Plan participants under AAM's operational and financial oversight;

h.    as to AAM, failing to take reasonable steps to ensure that employees who remained Plan participants during the transition received the health benefits promised under the Plan; and

i.    as to AAM, failing to remedy known Plan funding and claim-payment failures after assuming financial responsibility for employees under its oversight.

83.    As a result of such breaches, Defendants have caused monetary loss to Plaintiffs and the Plan for which Defendants are individually liable. Accordingly, Plaintiffs bring this action on behalf of themselves and all other similarly situated Plan participants and beneficiaries, and on behalf of and for the

benefit of the Plan.

## SECOND CLAIM FOR RELIEF
### Co-Fiduciary Liability Against the Individual Defendant, KPC HealthCare, HNAS, and AAM
### (ERISA § 405, 29 U.S.C. § 1105)

84.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

85.     The Individual Defendant, KPC Healthcare, HNAS, and AAM knowingly participated in, undertook to conceal, enabled, and failed to make reasonable efforts to remedy the fiduciary breaches of KPC and their other co-fiduciaries. AAM knew that Plan participants under its oversight remained dependent on the Plan for covered health benefits, that HNAS invoiced AAM for claims incurred after May 31, 2024, that covered claims remained unpaid, that AAM controlled whether those claims would be funded, and that AAM's refusal to fund those claims would harm Plan participants and beneficiaries.

86.     Consequently, the Individual Defendant KPC Group, KPC Healthcare, HNAS, and AAM are jointly and severally liable for all monetary loss and other harm caused by their co-fiduciaries' breaches of fiduciary duty with respect to the Plan. As to AAM, that liability includes unpaid covered claims, out-of-pocket payments, lost discounts, collection-related harm, interest, and other losses arising from covered claims incurred after May 31, 2024, by Plan participants and beneficiaries under AAM's operational or financial oversight.

## THIRD CLAIM FOR RELIEF
### For Appropriate Equitable Relief Against All Defendants
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

87.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

88.     Plaintiffs and the Class are entitled to appropriate equitable relief to

ensure the protection of their rights, redress continued malfeasance with respect to Plan assets and Plan administration, prevent unjust enrichment, require an accounting, impose a constructive trust where appropriate, surcharge fiduciaries for losses caused by their breaches, and require Defendants, including AAM, to fund and pay covered claims that should have been paid by the Plan.

89.    Plaintiffs and the Class are also entitled to equitable relief against AAM because AAM assumed operational and financial control over certain KPC facilities, accepted responsibility for funding the Plan for employees under its oversight, received invoices for covered claims incurred after May 31, 2024, acknowledged responsibility for at least some post-June 1, 2024 covered claims, but refused to commit to fund or pay those claims.

90.    In addition to the conduct described above, Plaintiffs and the Class are entitled to appropriate equitable relief to redress Defendants' violations of, or knowing participation in violations of, ERISA's prohibition on transactions set forth in ERISA Section 406(a), 29 U.S.C. §1106(a), through, at a minimum, the transfer of plan assets to, use of plan assets by or for the benefit of parties in interest (as defined by ERISA).

**FOURTH CLAIM FOR RELIEF**
**(Against KPC, KPC HealthCare, and Individual Defendant, for Breaches of the Exclusive Purpose Requirement)**

91.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

92.    ERISA § 403(c)(1) allows plan assets to be held only for the exclusive purposes of providing benefits to participants and defraying reasonable administration expenses. It also forbids holding plan assets for any employer's benefit. 29 U.S.C. § 1103(c)(1).

93.     Withheld employee contributions became the Plans' assets as soon as the Company could have reasonably segregated them from general assets, and at most 15 days after the end of the month in which they would have been payable to the employee. 29 C.F.R. § 2510.3-102(a)(1), (b)(1). During the relevant time period, KPC, KPC Healthcare, and the Individual Defendant failed to remit employee contributions to the Plan long after they could have reasonably segregated the employee contributions from the Company's general assets.

94.     By its actions and omissions, KPC, KPC Healthcare, and the Individual Defendant:

a.     allowed the Plans' assets to be held outside the Plans for extended periods, in violation of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1); and

b.     caused harm to the Plans' participants and beneficiaries for which they are entitled to relief pursuant to ERISA §§ 409, 502(a)(2), and 502(a)(5), 29 U.S.C. §§ 1109, 1132(a)(2).

**FIFTH CLAIM FOR RELIEF**
**(Against KPC, KPC HealthCare, and Individual Defendant for Breaches of Fiduciary Duties for Failing to Remit Employee Contributions)**

95.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

96.     As fiduciaries to the Plans, KPC, KPC HealthCare, and the Individual Defendant had a duty under ERISA § 404(a)(1)(A)-(B) to act prudently and loyally in the sole interest of the Plans' participants and beneficiaries. 29 U.S.C. § 1104(a)(1)(A)-(B).

97.     During the relevant time period, KPC, KPC HealthCare, and the Individual Defendant did not promptly segregate and remit employee

contributions to the Plans.

98.     Diversion of employee contributions was imprudent and disloyal because it was not in the interest of the Plans' participants or beneficiaries. A prudent person acting in a fiduciary capacity in circumstances similar to those faced by KPC, KPC HealthCare, and the Individual Defendant during the relevant time period would promptly segregate and remit employee contributions to the Plan and monitor accounts to ensure that the Company did not convert the Plan's assets for its own use.

99.     By its actions and omissions, KPC, KPC HealthCare, and the Individual Defendant:

a.     failed to discharge their duties to the Plan solely in the interests of participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable administration expenses, in violation of ERISA § 404(a)(1)(A);

b.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use to conduct an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(A)-(B); and

c.     caused harm to the Plan's participants and beneficiaries for which they are entitled to relief pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2).

**SIXTH CLAIM FOR RELIEF**
**(Against All Defendants for Breaches of Fiduciary Duties for Failing to Ensure the Plan Received Employer Contributions)**

100.    Plaintiffs re-allege and incorporate herein by reference all prior

allegations in this Complaint as if fully set forth herein.

101.   As fiduciaries to the Plans, Defendants had a duty under ERISA § 404(a)(1)(A)-(B) to act prudently and loyally in the sole interest of the Plan's participants and beneficiaries. 29 U.S.C. § 1104(a)(1)(A)-(B).

102.   Beginning in January 2023, Defendants failed to ensure that the Plan received the employer contributions owed to employees.

103.   Failure to ensure that the Plan received the owed employer contributions was imprudent and disloyal because it was not in the interest of the Plan's participants or beneficiaries.

104.   A prudent person acting in a fiduciary capacity in similar circumstances to those faced by the Defendants during the relevant time period would act to ensure that the Plan received all employer contributions to which they were entitled.

105.   As to AAM only, beginning June 1, 2024, AAM failed to ensure that the Plan received the funding required to pay covered claims incurred by Plan participants and beneficiaries under AAM's operational and financial oversight, despite receiving invoices for those claims and acknowledging responsibility for at least some of them.

106.   By its actions and omissions, Defendants:

a.      failed to discharge their duties to the Plan solely in the interests of the Plan's participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable administration expenses, in violation of ERISA § 404(a)(1)(A);

b.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like

capacity and familiar with such matters would use to conduct an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(A)-(B); and

c.    caused harm to the Plan's participants and beneficiaries for which they are entitled to relief pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2).

**SEVENTH CLAIM FOR RELIEF**
**(Against KPC and AAM for Prohibited Transactions)**

107.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

108.    ERISA § 406(a)(1)(D) prohibited the Company, as a fiduciary to the Plan, from transferring the Plan's assets to a "party in interest." 29 U.S.C. § 1106(a)(1)(D).

109.    The Company was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

110.    During the relevant time period, the Company failed to segregate and remit employee contributions to a dedicated Plan trust account and commingled the Plan's assets with general employer assets. For its part, AAM failed to correct the misappropriation of Plan assets.

111.    By its actions and omissions, the Company:

a.    caused the Plan to enter into transactions that it knew or should have known constituted prohibited transfers of the Plan's assets to a party in interest in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

b.    caused harm to the Plan's participants and beneficiaries for which they are entitled to relief pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2).

## EIGHTH CLAIM FOR RELIEF
### (Against KPC and AAM for Self-Dealing)

112. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint as if fully set forth herein.

113. ERISA § 406(b)(1) prohibits KPC and AAM, as sponsors and fiduciaries to the Plan, from dealing with the Plan's assets in their "own interest" or for their "own account." 29 U.S.C. § 1106(b)(1).

114. ERISA § 406(b)(2) prohibits KPC and AAM, as the Plan's sponsors and fiduciaries, from acting in any transaction involving the Plan on behalf of a party whose interests are adverse to the interests of the Plan or its participants and beneficiaries. 29 U.S.C. § 1106(b)(2).

115. During the relevant time period, KPC and AAM allowed employee payroll deductions, which were Plan assets, to languish in the Company's general operating account, which benefited the Company's business interests, at the expense of the Plan and its participants.

116. By its actions and omissions, KPC and AAM:

a.     engaged in prohibited self-dealing in violation of ERISA § 404(b)(1) and (2), 29 U.S.C. § 1106(b)(1)-(2); and

b.     caused harm to the Plan's participants and beneficiaries for which they are entitled to relief pursuant to ERISA §§ 409, 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.     For an order certifying the action as a class action under Rules 23(b)(2) and (b)(3);

b.     For an order appointing Plaintiffs as class representatives and

SECOND AMENDED CLASS ACTION COMPLAINT - 29
CASE NO. 5:24-CV-01893

Plaintiffs' counsel as class counsel;

c.      For an Order declaring that the Defendants violated by terms of the Plan and rights of Plaintiffs and the Class thereunder by a) failing to pay the full amount of benefits due under the Plan; b) failing to disclose to Plaintiffs and the Class that the Plan had ceased providing payment of covered health benefits; c) failing to adequately and prudently fund, manage and administer the Plan; d) failing to hold Plan assets in trust; and e) misusing and misappropriating Plan assets.

d.      For an order requiring Defendants to make the Plan whole for all losses caused by the conduct described above and to pay all benefits due pursuant to the terms of the Plan;

e.      For an order requiring that the Company be liable to restore all losses, plus interest and/or lost opportunity earnings incurred by the Plan as a result of their violations of ERISA;

f.      For an order requiring Defendants to restore to Plaintiffs and the proposed class and/or the Plan premium contributions collected;

g.      For the equitable relief of surcharge, including, without limitation, the return of financial benefits Defendants gained by breaching their fiduciary duties to Plaintiffs and the Class and funds sufficient to make the Plan whole for the losses caused by Defendants' conduct;

h.      For an order requiring that Defendants submit to an equitable accounting;

i.      For an order requiring HNAS to provide a full accounting of all Plan participants and beneficiaries under its operational or financial oversight during the relevant time, all covered claims incurred by those

participants and beneficiaries, all invoices received from Anthem or any other entity for those claims, and all communications concerning responsibility for funding or paying those claims;

j.      For an order requiring AAM to provide a full accounting of all Plan participants and beneficiaries under its operational or financial oversight after May 31, 2024, all covered claims incurred by those participants and beneficiaries after May 31, 2024, all invoices received from HNAS, Anthem, or any other Plan administrator for those claims, all amounts AAM paid or refused to pay, and all communications concerning responsibility for funding or paying those claims;

k.      For an order requiring AAM to fund and pay all covered claims incurred after May 31, 2024, by Plan participants and beneficiaries under AAM's operational or financial oversight, together with interest, lost discounts, out-of-pocket payments, collection-related losses, and other appropriate equitable relief;

l.      For the imposition of a constructive trust over all funds held by Defendants that properly constitute Plan assets;

m.      For interest on all sums awarded;

n.      For attorneys' fees and the costs of action in an amount the Court determines to be reasonable, pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), and to the extent otherwise provided by the Plan or by law; and

o.      For such other relief as may be equitable, just, and proper.

DATED: May 13, 2026                    Respectfully submitted,


                                       /s/*Eric Lechtzin*
                                       Eric Lechtzin (SBN 248958)
                                       **EDELSON LECHTZIN, LLP**
                                       411 South State Street, Suite N-300
                                       Newtown, PA 18940
                                       Telephone: (215) 867-2399, Ext. 1
                                       elechtzin@edelson-law.com

                                       Brandon J. Hill*
                                       Luis A. Cabassa*
                                       Amanda E. Heystek*
                                       **WENZEL FENTON CABASSA, P.A.**
                                       1110 N. Florida Avenue, Suite 300
                                       Tampa, FL 33602
                                       Telephone: (813) 224-0431
                                       bhill@wfclaw.com
                                       lcabassa@wfclaw.com
                                       aheystek@wfclaw.com

                                       *Counsel for Plaintiffs and the Proposed Class*



* Admitted *pro hac vice.*